UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JSC  FOREIGN ECONOMIC ASSOCIATION          :
TECHNOSTROYEXPORT,
                                           :        03 Civ. 5562 (JGK) (AJP)
            Plaintiff,
                                           :        **OPINION AND ORDER**
        -against-
                                           :
INTERNATIONAL DEVELOPMENT AND
TRADE SERVICES, INC., et al.,              :

            Defendants.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Chief Magistrate Judge:**

Plaintiff JSC Foreign Economic Association Technostroyexport ("JSC") submitted
Proposed Findings of Fact and Conclusions of Law to further support this Court's prior award from
the bench of attorneys' fees against defendant Brigette R. Jossem ("Jossem") for failing to produce
relevant documents in response to JSC's discovery requests.  Defendant Jossem filed an Opposition
to Plaintiff's Proposed Findings of Fact and Conclusions of Law. (Dkt. No. 427.)

For the reasons set forth below, the Court awards plaintiff JSC attorneys' fees of
$108,946 against Jossem pursuant to Fed. R. Civ. P. 37 and, to the extent necessary, the Court's
inherent power.

**FINDINGS OF FACT**

JSC seeks sanctions against Jossem for failing to produce documents concerning, <u>inter alia</u>, Jossem's involvement with Christie's, the famed auction house.

Jossem has been a regular customer of Christie's since approximately 1993, when she began to make auction purchases with money that JSC alleges was looted by Jossem's mother, defendant Edith Reich, from defendant IDTS. (<u>See</u> JSC Findings of Fact ["FOF"] ¶ 1.)[1] In July 1996, four months after the arbitration awards in the underlying case between JSC and defendant IDTS became final, Jossem, who until that time maintained a Christie's account in her own name, directed Christie's to use the name Burnett Trading Ltd. for all future transactions. (JSC FOF ¶ 2; Tiska Aff. Ex. 2: Dep. Ex. Christie's 19.) Jossem told Christie's that the name change was an "extremely urgent matter" and directed that the name Jossem "should not be associated with any stock number whatsoever" in Christie's computerized files. (Tiska Aff. Ex. 2: 7/11/96 Christie's Message.) From 1996 until the end of 2003, Jossem, using the name Burnett Trading, sold items at Christie's for more than $9.1 million and made purchases of about $1.7 million. (JSC FOF ¶ 3 n.2; Tiska Aff. Ex. 4: Christie's Sale Summaries.)

---

[1] The Court notes that although defendant Jossem was directed to submit counter-proposed Findings and Conclusions (<u>see</u> Dkt. No. 423: 12/6/04 Peck Order), Jossem did not submit any proposed Findings of Fact, but merely argued that plaintiff JSC was not entitled to sanctions as a matter of law. (<u>See</u> Dkt. No. 427: Jossem Opposition.)

On October 16, 2003, JSC served its first request for production of documents in this action. (JSC FOF ¶ 4; Tiska Aff. Ex. 7: JSC First Request for Production of Documents.) Among other things, JSC requested the following:

> 58. All documents concerning any purchase or sale by Reich, Jossem or Barnett Trading through Christie's or Sotheby's.
>
> . . . .
>
> 92. Documents sufficient to identify all artwork, jewelry or other items purchased or sold by Reich, Jossem or B[u]rnett Trading through Christie's or Sotheby's.
>
> . . . .
>
> 94. Documents sufficient to show the disposition of funds received by Reich, Jossem or B[u]rnett Trading for any sale of artwork, jewelry or other item through Christie's or Sotheby's.

(Id.)

On November 12, 2003, a little over a month after the first discovery request, Jossem stopped using the name Burnett in her dealings with Christie's and entered into a new consignment agreement under the name Hackney Group Limited ("Hackney"). (JSC FOF ¶¶ 5-6; Tiska Aff. Ex. 9: Hackney Consignment Agreement.) In December 2003, Jossem attempted to consign belongings from her East 72nd Street residence to Christie's under the Hackney name, with the help of one of her foreign attorneys, Michael Shine. (JSC FOF ¶ 7; Tiska Aff. Ex. 3: McGorry Dep. at 71-73.) In light of this lawsuit, however, Christie's declined to enter into the agreement with Hackney, and Jossem was forced to use her own name in the transaction. (Id. at 71-73, 75-76; Triska Aff. Ex. 12: 1/15/2004 Jossem Consignment Agreement.) In January 2004, Jossem met with Edward McGorry

and Simon Teakle, executives at Christie's, and informed them that "she was going to be consigning property to Christie's over the course of the next few months, and would like an advance against those funds." (JSC FOF ¶ 9; Tiska Aff. Ex. 3: McGorry Dep. at 54, 66.) A few days after the meeting with McGorry and Teakle, Jossem met with Melissa Gagen, a Christie's representative, to show her the furniture that she wished to consign, as well as the receipts for the many pieces she had purchased at Sotheby's auctions in England in 1993. (JSC FOF ¶ 10; Tiska Aff. Ex. 3: McGorry Dep. at 104-05; Tiska Aff. Ex. 13: Gagen Aff. ¶ 4.) Gagen told Jossem in a January 24, 2004 letter that Christie's would include most of Jossem's items in furniture auctions scheduled for April 8 and May 19, 2004. (Tiska Aff. Ex. 14: Gagen Letter.)[2]

Despite an Order to Show Cause for an attachment order signed by Judge Koeltl on February 3, 2004 and sent to counsel for Jossem that day, on February 4, 2004, Jossem arranged for another Christie's advance for $275,000 against twenty-one pieces of furniture. (JSC FOF ¶ 12; Tiska Aff. Ex. 15: 2/4/2004 Advance.) On February 10, 2004, Jossem's counsel Shine sent Christie's McGorry an e-mail providing him with "the bank co-ordinates for remitting the advance proceeds from time to time in the current situation," and directed Christie's to wire the funds to an account in the name of "Herzog, Fox Neeman" at the United Mizrahi Bank in London. (JSC FOF ¶ 13; Tiska Aff. Ex. 16: 2/10/2004 Shine e-mail; Tiska Aff. Ex. 3: McGorry Aff. at 158-60.) On February 12, 2004, Christie's wired $275,000 to the Herzog, Fox Neeman's London account. (JSC FOF P13;

---

[2] Jossem never produced any of the documents relating to any of her 2003-2004 dealings with Christie's or Sotheby's. (JSC FOF ¶ 11.)

Tiska Aff. Ex. 17.)  No documents concerning these transactions were produced to JSC by Jossem. (JSC FOF ¶ 13.)  Herzog, Fox Neeman is defendants' Israeli law firm, which acted more as a banker than as counsel.

Over the next month, Jossem continued to dispose of her property through Christie's, receiving another advance of $165,000 which Christie's wired to the Herzog, Fox Neeman account. (JSC FOF ¶ 14; Tiska Aff. Ex. 17.)  On March 13, Judge Koeltl issued the Attachment Order and notified counsel for Jossem.  (JSC FOF ¶ 15; Tiska Aff. Ex. 21: 3/13/04 Attachment Order.) However, on March 17, 2004, Jossem ignored the order and consigned jewelry and art to Christie's and arranged for yet another advance of $180,000 from Christie's into the Herzog, Fox Neeman account.  (JSC FOF ¶ 15; Tiska Aff. Ex. 3: McGorry Dep. at 139-40, 141-43; Tiska Aff. Ex. 22: 3/17/2004 Advance.)  All told, Christie's paid Jossem $970,000 in advances under the January 15, 2004 Consignment Agreement, all of which Christie's wired overseas at Jossem's direction to accounts not in Jossem's name.  (JSC FOF ¶ 15; Tiska Aff. Ex. 22.)

On April 2, 2004, the United States Marshal Service served Jossem with the Attachment Order.  (JSC FOF ¶ 16; Tiska Aff. Ex. 23: 4/2/2004 Attachment Order.)  On April 8, Jossem allowed Christie's auction of her furniture to go forward and two of her items were sold, although the funds remain at Christie's pursuant to an agreement among Christie's, JSC and defendants in connection with this suit.  (JSC FOF ¶ 16; Tiska Aff. Ex. 26: 2d Am. Garnishee's Statement; Tiska Aff. Ex. 27, Ex. A: 4/16/2004 Christie's Agreement.)

After JSC had learned that Jossem had consigned property to Christie's, supplemental discovery requests were served on Christie's, which led to the production of approximately 3,000 documents relating to Christie's dealings with Jossem, Burnett, and Hackney. (JSC FOF ¶ 17.) On April 20, 2004, JSC served its second request for production of documents on Jossem. (JSC FOF ¶ 17; Tiska Aff. Ex. 28.)

JSC also filed an ex parte motion for a supplemental order in aid of the attachment order, which Judge Koeltl granted, authorizing JSC and the U. S. Marshal to seize Jossem's personal property at her East 72nd Street Manhattan apartment and her home in Amagansett. (JSC FOF ¶ 18.) During the seizure, JSC's counsel found "hundreds of documents relating to transactions between Ms. Jossem and various auctions houses, including Christie's and Sotheby's. Some of those documents involved or related to Burnett Trading. . . . Ms. Jossem has never produced any documents in this action regarding her transaction with Christie's, Sotheby's or any other auction house. No documents concerning Ms. Jossem's dealings or involvement with Christie's, Sotheby's or Burnett were produced to [JSC] in this action before Christie's April 2004 production." (Tiska Aff. Ex. 29: Dunn Aff. ¶ 19.) Defense counsel, however, prevented JSC's counsel from taking the documents found in the apartment.

On May 14, 2004, JSC moved for an order holding Jossem in contempt based on her violations of the attachment order and seeking sanctions for her failure to produce documents; Judge Koeltl referred that motion to this Court. (Tiska Aff. Ex. 1: 5/14/2004 Koeltl Conf. at 15-18.) At the May 21, 2004 conference before this Court, JSC raised Jossem and Reich's failure to produce the

responsive documents found in defendants' Manhattan apartment – in essence, seeking to compel the production of the Apartment Documents. (Dkt. No. 197: 5/21/2004 Peck Conf. Tr.; see JSC FOF ¶ 20.) During the conference, this Court ordered that (1) any assertion of the Fifth Amendment by defendants "needs to be a sufficiently asserted Fifth Amendment privilege that the court can rule on, not just a blanket, I assert the Fifth now, find me 6 weeks later . . ."; and (2) to the extent any of the documents in the apartment were covered by JSC's first document request, all objections were "waived . . . no new objections so to speak." (Id. at 11-12, 21; see JSC FOF ¶ 20.)

On June 14, 2004, however, Jossem's counsel (David Newman of the firm Sonnenschein Nath & Rosenthal) submitted a letter to the Court on behalf of Jossem and Reich, stating simply:

> My clients object to the requests to the extent that they seek documents or information that might tend to incriminate them and whose required production would violate their constitutional rights pursuant to the Fifth Amendment of the United States Constitution.
>
> In light of the foregoing, my clients will not be producing any documents at this time.

(Tiska Aff. Ex. 31: 6/14/2004 Newman Letter; see JSC FOF ¶ 21.) The letter, obviously, did not comply with the Court's directive.

The issue was next raised at the June 28, 2004 conference with the Court. (See 6/28/04 Peck Conf. Tr.; see also Dkt. No. 378: Kawatra Aff. Ex. A: 6/24/04 Tiska Letter to Court.) Because JSC asserted that Jossem's predecessor counsel waived any Fifth Amendment privilege, the Court required Jossem to submit an affidavit from predecessor counsel as to whether the Fifth Amendment privilege was asserted or waived in conversations with JSC's counsel in response to the

first document requests.  (Dkt. No. 292: Delfin Aff. Ex. B: 6/28/04 Peck Conf. Tr. at 6-8.)  Jossem's

counsel also was directed to personally review the thousands of withheld Apartment Documents and

put in further submissions supporting the Fifth Amendment assertion.  (Id. at 10-12, 16-18.)  The

Court also specifically warned Jossem's counsel that if the Court had to review many documents to

see if the privilege claim was valid and if Jossem lost on the issue, Rule 37 cost sanctions would be

imposed.  (Id. at 18.)  After that conference, JSC submitted additional information which the Court

required Jossem's counsel to respond to.  (Delfin Aff. Ex. C: 7/2/04 Memo Endorsed Order.)  The

Court also directed Jossem to provide a formal privilege log and to provide the withheld Apartment

Documents to the Court for in camera review.  (Delfin Aff. Ex. D: 7/12/04 Memo Endorsed Order.)

At the next conference, on July 15, 2004, this Court again took up the issue of the

four boxes of Apartment Documents that defendant Jossem was declining to produce on Fifth

Amendment grounds.  (See generally Delfin Aff. Ex. E: 7/15/04 Peck Conf. Tr. at 17-28.)  The Court

noted that based on its review of one box of withheld documents, many of the documents appeared

to be corporate documents, and corporations have no Fifth Amendment privilege.  (Id. at 17-18.)

The Court noted that Jossem's "privilege log" was not sufficient to support her Fifth Amendment

claim.  (Id. at 19.)  When Jossem's counsel responded that while a "lot of these documents, as you

are aware, appear to be corporate documents because of the letterhead. . . . But the fact of the matter

is is that this is an alter ego case and possession –" (id. at 22-23), the Court responded that "[w]hat

you are basically saying is if I [order you to] produce any of these documents I may help prove the

plaintiff's [alter ego] case," but that is not a basis to assert the Fifth Amendment.  (Id. at 23.)

Because Jossem's prior counsel, Williams & Connolly, had represented in response to the first document request that no documents were withheld on the basis of the Fifth Amendment privilege, the Court ruled that it needed an affidavit as to when Jossem obtained the Apartment Documents, and whether the subjects of the Apartment Documents were the same as any documents that Williams & Connolly actually provided:

> THE COURT: Give me an affidavit from Ms. Reich or Ms. Jossem or anybody else with direct, personal knowledge as to when these documents came into their custody, as compared to the date that Williams and Connolly made their representation that they were not withholding any documents on the basis of the Fifth Amendment.
>
> In addition, I want an affidavit from counsel stating that you have reviewed the prior document production and whether these documents are on any of the same subject matters or the same issues of fear of criminal prosecution. Because if so, then [the Fifth Amendment privilege is] waived.

(Id. at 25-26; see also id. at 27-28.)

On July 26, 2004, Jossem's counsel submitted an affidavit concluding "that of the 8,474 pages of documents that they initially claimed were privileged, close to 6,000 were, in fact, not privileged." (JSC FOF ¶ 27; see Delfin Aff. Ex. H: Akbar 7/26/04 Aff. ¶¶ 15-16; Kawatra Aff. Ex. C: Newman 7/26/04 Letter to Court.) Jossem, however, now claimed that some of the documents that were not protected by the Fifth Amendment were covered by the attorney-client privilege. (Akbar 7/26/04 Aff. ¶ 17; Newman 7/26/04 Letter to Court at 1.) Jossem's counsel also informed the Court that Jossem would not be providing an affidavit as to when she obtained possession of the Apartment Documents, but instead would be filing objections with Judge Koeltl.

(JSC FOF ¶ 27; Newman 7/26/04 Letter to Court at 2.)  In light of Jossem's objections, the Court

issued a written order further explaining its reasoning, as follows:

While Reich's and Jossem's prior counsel did not withdraw the general objection of Fifth Amendment privilege, he did represent to plaintiff's counsel that no responsive documents were being withheld on that basis.  If defendants obtained possession of these documents at a later time, that withdrawal of the general objection, in fairness, should not apply to those documents.  If, on the other hand, defendants possessed the documents now in issue, at that time, their counsel's representation that no documents were being withheld on Fifth Amendment grounds should apply to those documents and thus the documents would need to be produced.  Counsel represents and speaks for the client, and if defendants withheld these documents from their counsel,[1] causing counsel to not assert the privilege, defendants should not obtain an advantage.

The Court notes moreover, that defendants and their current counsel were quite prepared to assert a blanket privilege as to all four boxes of documents, on an ipse dixit basis; only after the more careful review ordered by the Court were defendants forced to withdraw their privilege assertion as to 90% of the withheld documents.  That, and other conduct by defendants, supports the Court's concern of "gamesmanship" by defendants Reich and Jossem.

The Court reiterates that absent some showing that defendants Reich and Jossem did not possess the withheld documents at the time their prior counsel represented to plaintiffs that no responsive documents were being withheld on Fifth Amendment privilege grounds, the documents need to be produced.[2]

-----------------------

[1]    The "assuming arguendo" suggestion in defendants' objections that the earlier non-production was through "inadvertence" is totally unsupported by the record.  It is as likely, if not more so, that defendants intentionally did not provide these documents to their counsel for review and production because the documents may be proof of plaintiff's alter ego claims.

[2]    The affidavit need not come from Reich and Jossem.  If, hypothetically, Professor Moriarty was holding these documents and turned them over to defendants after the document production by prior counsel, Professor Moriarty can provide an affidavit.  Thus, the Court's requirement of an

> affidavit from someone with personal knowledge does not require defendants, who have generally asserted their Fifth Amendment rights, to provide an affidavit.

(Kawatra Aff. Ex. D: 7/27/04 Peck Order.)

Jossem (and Reich) declined to produce an affidavit as to when they obtained the Apartment Documents (Kawatra Aff. Ex. G: 8/2/04 Akbar Letter to Court), and the Court therefore found that any Fifth Amendment privilege in the remaining Apartment Documents was waived:

> The Court finds waiver of the privilege as to these documents because prior counsel waived (or did not assert) the privilege for the original document production. In the absence of information to the contrary, the Court finds that defendants Reich & Jossem had "possession, custody or control" of the documents at that time and thus they should have been provided, or the privilege asserted, at that time. . . . (Since defense counsel knew defendants would/could not provide an affidavit, one wonders why counsel wasted my and Judge Koeltl's time with extensions and stays.)

(Kawatra Aff. Ex. G: 8/3/04 Peck Memo Endorsed Order.) The Court now explicitly finds that Jossem and her counsel (the Sonnenschein firm) acted in bad faith in seeking stays of the time to provide an affidavit that they knew they would not provide. The Court finds that Jossem and her counsel engaged in a strategy of delay.

Jossem again sought a stay and filed objections with Judge Koeltl. (See JSC FOF ¶¶ 33-34.) After both sides briefed the issue, Jossem did an about face – she withdrew her objections and provided all of the documents formerly withheld on Fifth Amendment privilege grounds, only withholding from production documents she claimed were subject to the attorney-client privilege. (Kawatra Aff. Ex. K: Akbar 8/12/04 Letter to Judge Koeltl at 1; see JSC FOF ¶ 36.) The ostensible basis for Jossem's change of position was counsel's analysis of JSC's papers opposing Jossem's

objections "and conferring with [Jossem's] prior counsel" (id.), the former of which merely repeated

assertions previously made before this Court and the latter of which had allegedly occurred before.

In short, the Court finds that Jossem (and her counsel, the law firm of Sonnenschein

Nath & Rosenthal) had interposed the Fifth Amendment claim purely for purposes of delay and acted

in bad faith, resulting in considerable legal expenses for JSC.

On August 16, 2004, defendants produced a privilege log identifying 39 of the

Apartment Documents as allegedly subject to the attorney-client privilege. (JSC FOF ¶ 37; Kawatra

Aff. Ex. L: Newman 8/16/04 Aff. ¶ 5.) The Court rejected the privilege log at the August 16, 2004

conference, because "what this doesn't indicate is who is asserting the privilege, which is one of the

things we had talked about before; in other words, some of these may be individual documents of

Ms. Jossem [or] Reich, others appear to be corporate documents of corporations, who you do not

represent and who are in default in the litigation." (Kawatra Aff. Ex. M: 8/16/04 Peck Conf. Tr. at

3.) On August 18, 2004, Jossem produced a revised privilege log, now claiming privilege as to only

23 documents. (JSC FOF ¶ 38; Kawatra Aff. Ex. N: Amended Privilege Log.) After further

discussion among the parties, Jossem withdrew the claim of attorney-client privilege to all but six

documents (which JSC did not challenge). (JSC FOF ¶ 39 & n.16; Kawatra Aff. Ex. O: Tiska

8/26/04 Letter to Court.)

In short, of the more than 8,400 documents found in the apartment, after months of litigation, at great expense to JSC (and extensive involvement by this Court and Judge Koeltl), Jossem was required to produce all but six documents.[3/]

Not surprisingly, JSC moved for attorneys' fees in connection with the discovery disputes concerning the Apartment Documents. (Dkt. Nos. 364-65; see also JSC FOF ¶ 40.)

At a hearing on September 21, 2004, the Court heard oral argument on the atorneys' fees motion. (9/21/04 Peck Conf. Tr. at 21-42.) Jossem's counsel's only argument as to why the Court should not require Jossem to pay JSC's legal fees in connection with the applications to the Court that lead to production of the Apartment Documents is that JSC did not show "prejudice":

| | |
|---|---|
| THE COURT: | . . . Why shouldn't the court order attorney's fees of the nature that I have just described under the <u>Residential Funding</u> ruling, and then we'll go on to the more serious issue of why the court should not also order repatriation. |
| MR. AKBAR [Jossem's counsel]: | Our argument as set forth in our papers, our primary argument is that you have to have a showing of prejudice in order to – |
| THE COURT: | The prejudice is it costs them X thousands of dollars of attorney's fees to get documents that your clients under the rules were required to produce merely because they had a discovery request. So, focusing on the attorney's fees, are you really telling me that's not a showing of prejudice sufficient under your view of the law, whether that view of needing to show prejudice is correct or not? |

---

[3/]  As JSC points out, in addition to the documents finally produced, Jossem neither produced, nor explained why she did not previously produce or currently have, certain documents about Patricia, Inc., and documents about her dealings with Christie's in 2003-2004. (See JSC FOF ¶¶ 42-44.)

MR. AKBAR:      It's not a showing of prejudice because assuming hypothetically that these documents had been discovered in February and the same objections had been made, the same motion practice could have been made about it, they still would have had to go through the same –

THE COURT:      <u>And under Rule 37 the loser pays if the court wishes to go that route on any discovery motion.  Agreed?</u>

MR. AKBAR:      <u>Agreed</u>.

THE COURT:      OK.  So you lost.

They made motions, the court ruled.  The court held your feet to the fire.  You went to Judge Koeltl and got stays.  After all of that was said and done, you sat down and read the documents and said, Oh, half the documents are the same genre of what we previously produced.  Here they are.  And then in a subsequent wave, after further litigation, Oh, we are withdrawing the claims of privilege.  And there was another wave in there.

So why on all of that isn't that a no-brainer that they get their attorney's fees on everything having to do with the document production of the documents that were discovered only through a combination of learning from Christie's that certain things exist and then tripping across documents when they were otherwise in the apartment for the asset seizure.

MR. AKBAR:      I think what this comes back to is, the point we make in our papers was simply that when they moved for their order of attachment in early February there was no representation to them that all documents have been produced at that point.

THE COURT:      Was such a representation made?

MR. AKBAR:      Subsequently, I believe in February, Mr. Oldham from Williams & Connolly said that they had finished producing documents.

THE COURT:      And yet these documents, some of which existed at that time, were not produced, existed in the sense of they came out of Christie's or

other sources, and we don't know why your clients either didn't have them then or didn't produce them.

MR. AKBAR:      That's correct.  We don't know, and when they –

THE COURT:      Whose burden is that?

MR. AKBAR:      Well, I don't know what Mr. Zymelman and Mr. Oldman [predecessor counsel] did.  I've spoken with them about this issue.

THE COURT:      You and they are the same person.  I don't mean that in it's metaphysical sense.  You are both counsel for Reich and Jossem.

MR. AKBAR:      That is right.

THE COURT:      If you don't know what they did, that's your problem.  If the question is, as it appears, that either your clients didn't have these documents or they had them and didn't give them to their lawyer – and, because of the lack of information from your clients the court is and does assume the latter.  Call that using an inference in a discovery, but that's what the court assumes, that your clients had these documents and for whatever reason, I think we can assume the reason has to do with their unwillingness to let the plaintiff know their assets, didn't give them to Williams & Connolly.  So, again, coming back to all of this, whether – repatriation and the timing as such is a separate issue, and prejudice, and we'll come to that in a minute – is there anything that you can tell me that can prevent me from finalizing my tentative ruling, at least to the extent of ordering reimbursement of reasonable attorney's fees with that amount to be determined hopefully by a negotiation among the parties, but then, barring that – and I suggest it won't work just because that seems to be the nature of this case – a court order.

      If the answer is you have nothing to add to what you have already said in your papers, I'm not trying to torture you personally.

MR. AKBAR:      I appreciate that, your Honor.

I would simply add that the record on this motion and before the court doesn't have any indication as to when those documents did come into their possession.

THE COURT: The court believes that you have that burden and the court is prepared, even if the plaintiffs have that burden, to believe that since there has been no information from you – and by "you" I mean your clients, who are the only ones who have possession of that information, that whether it's an inference from the Fifth Amendment assertion or just an inference from the lack of information from the person who has access to it, the court assumes and rules that it is assuming that your clients had these documents and failed to give them to counsel. I can probably add willfully failed to give them to counsel.

MR. AKBAR: Your Honor, on that I would simply say that we have our position laid out in our papers, and our primary argument rests on their lack of prejudice.

(9/21/04 Peck Conf. Tr. at 36-40, emphasis added.) At the conclusion of the oral argument on the attorneys' fee issue, the Court ruled that pursuant to Rule 37 and the Residential Funding case, JSC as the prevailing party on the discovery issues was entitled to its attorneys' fees, in an amount to be determined by submission of its contemporaneous time records. (Id. at 41-42.) The Court ruled:

THE COURT: The court rules that pursuant to Rule 37 and the court's inherent power under the Residential Funding case that it is clear that the documents were produced to plaintiffs only as the result of at least three, if not more, motions or applications to this court in lieu of formal motions asking the court to handle discovery, that Rule 37 allows the winning party to be given attorney's fees in the court's discretion, and that to the extent that any of this were to go beyond the literal wording of Rule 37, Residential Funding certainly gives the court, as I've already read into the record, broad discretion in fashioning an appropriate sanction, certainly an appropriate sanction here is that Ms. Jossem pay reasonable attorney's fees incurred by plaintiff's counsel in all motions to get these documents produced, including but not limited to this motion for sanctions and the costs of

any subsequent briefing on atorney's fees applications, costs on costs as the saying goes. . . .

The only issue remaining is a determination of what is the exact dollar amount, and that is to be determined subsequently. . . .

(Id. at 41, emphasis added.)

Based on the parties' submissions and agreement as to the amount of the fees (based on a 25% reduction of the fees initially sought by JSC) but not the imposition of fees, the Court awarded JSC $69,453 in reimbursement of attorneys' fees (and costs) for the Apartment Documents discovery applications. (Kawatra Aff. Ex. T: 10/21/04 Order; accord, Dkt. No. 393: 10/21/04 Order.)

Jossem filed objections with Judge Koeltl to my award of attorneys' fees to JSC. After briefing and argument, Judge Koeltl remanded the matter to me for further findings. (Dkt. No. 422: 12/4/04 Koeltl Order.) As a result of the remand, this Court directed JSC to submit proposed findings of fact and conclusions of law in support of the award of attorneys' fees sanctions, and directed Jossem "to provide counter-proposed findings . . . indicating where it agrees and where it disagrees" with JSC's findings. (Dkt. No. 423: Peck 12/6/04 Order.) JSC submitted proposed Findings of Fact and Conclusions of Law, while Jossem's Opposition papers only dealt with the legal issues and, despite this Court's Order, did not address Findings of Fact. (See Jossem's Opp. to Plaintiff's Proposed Findings of Fact & Conclusions of Law.)

Finally, in a supplemental affidavit after submission of JSC's Findings of Fact, counsel for JSC documented an additional $35,262 in legal fees spent in connection with the

Apartment Documents discovery and sanction motions (including preparation of JSC's FOF) from September 30, 2004 to December 13, 2004.  (Dunn 12/22/04 Aff.)  JSC also sought $4,231 in additional costs, based on the methodology previously agreed on by the parties and approved by the Court.  (Id.)

Thus, JSC's attorneys' fees motion seeks $69,453 plus $39,493, for a total of $108,946.  For the reasons set forth below, the Court orders Jossem to reimburse JSC for that $108,946 in attorneys' fees.

## ANALYSIS

### I.    JOSSEM IS ORDERED TO REIMBURSE JSC $108,946 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(a) AND (b)[4/]

#### A.    Rule 37 Sanctions: Overview

"Rule 37 of The Federal Rules of Civil Procedure addresses the consequences of a party's failure to comply with discovery orders." Quiles v. Beth Israel Med. Ctr., 168 F.R.D. 15, 17 (S.D.N.Y. June 24, 1996) (Koeltl, D.J.); see also, e.g., Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 106 (2d Cir. 2002); Source Enter., Inc. v. Tanners Ave. Corp., 04 Civ. 1788, 2004 WL 2471536 at *4 (S.D.N.Y. Nov. 3, 2004) ("'Federal Rule of Civil Procedure 37 provides for the imposition of sanctions, including attorneys fees and costs, for certain discovery abuses.'") (citing Cielo Creations, Inc. v. Gao Da Trading Co., 04 Civ. 1952, 2004 WL 1460372 at *2 (S.D.N.Y. June 28, 2004)); Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.,

---

[4/]    Jossem's counsel argues in its opposition to JSC's proposed findings of fact that sanctions are not appropriate because JSC is seeking sanctions under Rule 37(a) and Rule 37(b), but "[r]ather, as Jossem has consistently maintained, Rule 37(c) governs." (Jossem Opp. Proposed Findings of Fact at 2.). Although Jossem fails to offer an explanation as to why Rule 37(c) governs, the Court suspects that Jossem is attempting to argue that the responsive documents found in Jossem's apartment are Rule 26(e)(1) documents. However, there is not a scintilla of evidence that Jossem did not have possession, custody or control of these documents at the time of JSC's first document request (indeed, the Court gave Jossem an opportunity to submit evidence as to when she obtained the Apartment Documents, but she declined to do so; see page 9 above). Moreover, Rule 37(c) explicitly states that "the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A)." Thus, Jossem's contention that Rule 37(c) governs is not only incorrect but irrelevant, since the Court can impose attorneys' fees under Rule 37(c), just as under Rules 37(a) & (b).

212 F.R.D. 94, 102 (E.D.N.Y. 2002) ("Federal Rule of Civil Procedure 37 specifically addresses discovery sanctions where, as here, a party fails to obey a discovery order.").

Rule 37 "provides a spectrum of sanctions.  The mildest is an order to reimburse the opposing party for expenses caused by the failure to cooperate.  More stringent are orders striking out portions of the pleadings, prohibiting the introduction of evidence on particular points and deeming disputed issues determined adversely to the position of the disobedient party.  Harshest of all are orders of dismissal and default judgment."  Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979); accord, e.g., New York Bay Co. v. State Bank of Patiala, 93 Civ. 6075, 1995 WL 567357 at *4 (S.D.N.Y. Sept. 25, 1995) (Peck, M.J.).  "The sanctions specified under Rule 37 are not exhaustive, and the Court may impose such sanctions as are just."  New York Bay Co. v. State Bank of Patiala, 1995 WL 567357 at *4.

Rule 37 sanctions "serve a threefold purpose.  Preclusionary orders ensure that a party will not be able to profit from its own failure to comply.  Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand.  Finally, although the most drastic sanctions may not be imposed as 'mere penalties,' courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault."  Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d at 1066 (citations omitted); accord, e.g., New York Bay Co. v. State Bank of Patiala, 1995 WL 567357 at *4; see, e.g., 2 Michael C. Silberg & Edward M. Spiro, Civil Practice in the Southern District of New York

§ 26:2 at 26-8 (2d ed. 2004) [hereafter, "Silberberg"], & cases cited therein; see also, e.g., Cielo Creations, Inc. v. Gao Da Trading Co., 2004 WL 1460372 at *2 ("'Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'") (quoting Roadway Exp., Inc. v. Piper, 447 U.S. 752, 763-64, 100 S. Ct. 2455, 2463 (1980)) (internal quotation omitted); A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 96 Civ. 9721, 98 Civ. 0123, 2002 WL 54610 at *6 (S.D.N.Y. Jan. 15, 2002) (same); Quiles v. Beth Israel Med. Ctr., 168 F.R.D. at 18 ("Sanctions provided under Rule 37 serve several purposes: to ensure that the parties comply with court orders in the particular case; to serve as a specific deterrent by penalizing those whose conduct warrants sanction; and to provide a general deterrent effect."); see generally 7 Moore's Federal Practice § 37.50[1] (3d ed. 2005).

"Pursuant to these provisions [of Rule 37], the court may make awards on its own determination, and such awards do not require a finding of wilful or bad faith conduct on the part of counsel." Brignoli v. Balch, Hardy & Scheinman, Inc., 86 Civ. 4103, 1989 WL 146767 at *8 (S.D.N.Y. Dec. 1, 1989).

The Court has broad discretion in determining appropriate Rule 37 sanctions. See, e.g., 2 Silberberg § 26:9 (citing cases); New York Bay Co. v. Bank of Patiala, 1995 WL 567357 at *5. "In view of the fact that the trial court has firsthand familiarity with all of the pertinent circumstances of the particular case, the decision of whether to impose sanctions, and the particular type of sanctions to be imposed, are matters generally entrusted to the trial court's broad discretion."

7 Moore's Federal Practice § 37.50[1][b] (3d ed. 2005); see, e.g., Ashkinazi v. Sapir, 02 Civ. 0002, 2005 WL 937597 at *4 (S.D.N.Y. Apr. 20, 2005) ("District courts have broad discretion in imposing discovery sanctions."); Aetna Life Ins. Co. v. Lecht, 03 Civ. 6764, 2005 WL 180873 at *1 (S.D.N.Y. Jan. 27, 2005) ("The District Court's imposition of sanctions pursuant to Rule 37 is reviewed for an abuse of discretion."); Source Enter., Inc. v. Tanners Ave. Corp., 2004 WL 2471536 at *4 ("The Second Circuit has held that 'the imposition of sanctions under Rule 37 is within the discretion of the district court.'") (quoting John B Hull, Inc., v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir.1988)); Alvarado v. Manhattan Worker Career Ctr., 01 Civ. 9288, 2003 WL 194203 at *1 (S.D.N.Y. Jan. 28, 2003) ("'Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses.'") (quoting Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999)), cert. denied, 528 U.S. 1119, 120 S. Ct. 940 (2000); A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 2002 WL 54610 at *7 ("The Court has wide discretion in imposing sanctions. As the Second Circuit has observed, '[w]hen a party seeks to frustrate [the purpose of the discovery provisions of the Federal Rules of Civil Procedure] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate.'") (quoting Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir.1991)); Quiles v. Beth Israel Med. Ctr., 168 F.R.D. at 18 ("The imposition of sanctions under Rule 37 lies within the broad discretion of the trial court."). "The Second Circuit has repeatedly stated the importance of following discovery orders of the Court,

warning that '[a] party who flouts such orders does so at his peril.'" Intertec Contracting A/S v. Turner Steiner Int'l, S.A., 98 Civ. 9116, 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001).

Rule 37 "places the burden on the disobedient party to avoid expenses [including attorneys' fees] by showing that his failure is justified or that special circumstances make an award of expenses unjust."  1970 Advisory Committee Notes to Rule 37(b).  Thus, "expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court."  1970 Advisory Committee Notes to Rule 37(a)(4); see also discussion below.

**B.     Under Rule 37(a)(4)(A), Jossem is Ordered to  Reimburse JSC $8,843 in Attorney's Fees and Expenses for the First Discovery Motion**

Rule 37(a) provides that a party "may apply for an order compelling disclosure or discovery" where "a party in response to a request for inspection submitted under Rule 34, fails to . . . permit inspection as requested."  Fed. R. Civ. P. 37(a)(2)(B).  Rule 37(a)(3) further provides that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(3).

"An award of reasonable fees incurred in bringing a motion to compel discovery is the least harsh of all the sanctions allowed under Rule 37."  Aetna Life Ins. Co. v. Licht, 03 Civ. 6764, 2005 WL 180873 at *1 (S.D.N.Y. Jan. 27, 2005); see also, e.g., 7 Moore's Federal Practice § 37.23[6].

Rule 37(a)(4)(A), entitled "Expenses and Sanctions," provides that:

If the motion [to compel discovery] is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the

> moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A) (emphasis added).[5/]

Under Rule 37(a), a finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees. See, e.g., Devaney v. Continental Am. Ins. Co., 989 F.2d 1154, 1162 (11th Cir. 1993); Merritt v. International Bhd. of Boilermakers, 649 F.2d 1013, 1018-19 (5th Cir. 1981); Green v. Baca, 225 F.R.D. 612, 614 (C.D. Cal. 2005) ("Rule 37(a)(4)(A) does not require a finding of 'bad faith' as a prerequisite to an award of 'reasonable expenses' to the moving party."); Messier v. Southbury Training Sch., No. 94-CV-1706, 1998 WL 841641 at *5 (D. Conn. Dec. 2, 1998); Imperial Chem. Indus. PLC v. Barr Labs., Inc., 126 F.R.D. 467, 473 (S.D.N.Y. 1989); Boulos v. Cato, 87 Civ. 2985, 1988 WL 70292 at *2 (S.D.N.Y. June 30, 1988) ("Rule 37(a)(4) does not require a finding of 'deliberate and wilful' misconduct before expenses may be imposed. Rather,

---

[5/]     "Sanctions imposed pursuant to . . . Rule 37(a) may be imposed upon either the attorney or the party or both." Imperial Chem. Indus., PLC v. Barr Labs., Inc., 126 F.R.D. at 473; see generally 7 Moore's Federal Practice § 37.23[4][a] ("Expense shifting sanctions may be imposed on both counsel and client. . . . [C]lients who are responsible for providing clearly inadequate disclosures or discovery responses may not hide behind their attorneys."). Since JSC has not sought sanctions from Jossem's counsel, and Jossem has not argued that sanctions should be imposed on her counsel rather than her, the Court will not further address the issue of whether Jossem's counsel could or should be sanctioned.

assessment of expenses is mandatory unless opposition to the motion was substantially justified. . . .").[6/]

The Advisory Committee Notes make clear that attorneys' fees <u>should</u> be awarded to the prevailing party:

> **Subdivision (a)(4).** This subdivision amends the provisions for award of expenses, including reasonable attorney's fees, to the prevailing party or person when a motion is made for an order compelling discovery. At present, an award of expenses is made only if the losing party or person is found to have acted without substantial justification. The change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified. The test of "substantial justification" remains, but the change in language is intended to encourage judges to be more alert to abuses occurring in the discovery process.

> On may occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

> . . . .

> <u>The proposed change provides in effect that expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court</u>. At the same time, a necessary flexibility is maintained, since the court retains the power to find that other circumstances make an award of expenses unjust

---

[6/] In any event, the Court finds that Jossem's failure to produce the Apartment Documents in response to JSC's first document request and before numerous court orders was willful and in bad faith. The Court finds that Jossem did not originally produce the Apartment Documents so that she could continue to auction property through Christie's and send the money abroad to avoid possible attachment by JSC (or other creditors). The Court also finds that Jossem refused to produce the documents even after JSC's initial motion, and frivolously asserted Fifth Amendment claims, because the documents are extremely helpful to JSC, and harmful to Jossem, on JSC's alter ego claims.

– as where the prevailing party also acted unjustifiably.  The amendment does not significantly narrow the discretion of the court, but rather presses the court to address itself to abusive practices.

1970 Advisory Committee Note to Rule 37(a)(4) (emphasis added).

As a result, a "rebuttable presumption exists in favor of imposing expense shifting sanctions on the party against whom a motion to compel disclosures or discovery is resolved. . . . Expense shifting sanctions are defined as 'the reasonable expenses incurred in making the motion, including attorney's fees.'" 7 Moore's Federal Practice § 37.23[1] (3d ed. 2005) (quoting Fed. R. Civ. P. 37(a)(4)(A)).  Indeed, "Rule 37 states that the court 'shall' award reasonable fees to the movant if the motion to compel is granted . . . " Aetna Life Ins. Co. v. Licht, 2005 WL 180873 at *1. Numerous decisions note that Rule 37(a) "provides, in fact, that the losing party on a motion to compel must pay reasonable expenses, barring extenuating circumstances." Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc., 212 F.R.D. at 103 (emphasis in original, citing cases); see, e.g., In re Omeprazole Patent Litig., No. M-21-81, No. MDL 1291, 2005 WL 818821 at *13 (S.D.N.Y. Feb. 18, 2005) ("'Under Rule 37(a), Fed. R. Civ. P., when a party moves to compel disclosure or discovery and the court finds that the opposing party's position in opposing the motion was not "substantially justified," the judge must impose costs on the opposing party or on his attorney.  See Rule 37(a), Fed. R. Civ. P. Advisory Committee Notes to 1970 Amendment (cost award is mandatory unless court finds that non-moving party acted justifiably).'") (emphasis added, quoting Bowne of New York City, Inc. v. AmBase Corp., 161 F.R.D. 258, 262 (S.D.N.Y. 1995)), aff'd, 227 F.R.D. 227 (S.D.N.Y. 2005); Creative Res. Group of New Jersey v. Creative Res. Group, Inc., 212 F.R.D. 94, 104 (E.D.N.Y. 2002) ("Rule 37(a)(4)(A) expressly provides that parties are

entitled to the expenses, including attorneys fees, incurred in making a motion to obtain a court order, unless the court finds that the adversary's position was substantially justified or that other circumstances make an award unjust. The rule provides, in fact, that the losing party on a motion to compel <u>must</u> pay reasonable expenses, barring extenuating circumstances."); <u>Envirosource, Inc.</u> v. <u>Horsehead Res. Dev. Co.</u>, 981 F. Supp. 876, 880 (S.D.N.Y. 1998) ("Defendant ignores another critical fact, which is that the [Rule 37(a)(4)(A)] essentially <u>mandate[s]</u> an award of attorney's fees under the instant circumstances.") (emphasis in original); <u>Fund Comm'n Serv., II, Inc.</u> v. <u>Westpac Banking Co.</u>, 93 Civ. 8298, 1996 WL 469660 at *5 (S.D.N.Y. Aug. 16, 1996) ("Rule 37(a) provides that the losing party on that motion must pay reasonable expenses, including attorney's fees, unless the court finds that the position was substantially justified or that other circumstances make an award unjust."); <u>Bowne of New York City, Inc.</u> v. <u>AmBase Corp.</u>, 161 F.R.D. at 262 ("Under Rule 37(a), F.R.Civ.P., when a party moves to compel disclosure or discovery and the court finds that the opposing party's position in opposing the motion was not 'substantially justified,' the judge must impose costs on the opposing party or on his attorney."); <u>Boulos</u> v. <u>Cato</u>, 1988 WL 70292 at *2; <u>see generally</u> 7 <u>Moore's Federal Practice</u> § 37.23[1] at 37-42 ("Moreover, a principal purpose of the presumption in favor of imposing expense shifting sanctions against a party who unsuccessfully litigates a motion to compel is to encourage judges to be more alert to abuses occurring in the discovery process. Courts did not often use the power they had been granted pursuant to the older formulation of the Rule to impose sanctions when a party's opposition to discovery was not substantially justified. The 1970 amendments, which established the present formulation of the rule, was intended to '[press] the court to address itself to abusive practices' and to 'utilize the most

important available sanction to deter abusive resort to the judiciary.'") (fn. omitted).  8A Charles Allan Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice & Procedure: Civil 2d</u> § 2288 at 664-66 (1994) (award of attorneys' fees "is mandatory unless one of the conditions for not making an award is found to exist . . . [T]he burden of persuasion has since 1970 been on the losing party to avoid assessment of expenses and fees. . . .").

In sum, in the words of Professors Wright and Miller, "[t]he great operative principle of Rule 37(a)(4) is that the loser pays."  8A Charles Allan Wright, Arthur R. Miller & Richard L. Marcus, <u>Federal Practice & Procedure: Civil 2d</u> § 2288 at 657-58; <u>accord</u>, <u>e.g.</u>, <u>Bowne of New York City, Inc.</u> v. <u>AmBase Corp.</u>, 161 F.R.D. 258, 265 (S.D.N.Y. 1995) (quoting Wright & Miller).

Pursuant to Rule 37(a), Jossem is ordered to reimburse JSC $8,843 in attorneys' fees. During the seizure of personal property at Jossem and Reich's apartment, JSC's counsel found thousands of pages of documents that were responsive to their first (and second) Rule 34 document requests, but which Jossem had not produced.  (<u>See</u> page 6 above.)  On May 14, 2004, JSC moved for sanctions against Jossem for withholding the documents, which Judge Koeltl referred to this Court; during a conference before this Court on May 21, 2004, JSC raised Jossem's failure to produce the responsive Apartment Documents.[7/]  (<u>See</u> pages 6-7 above.)  The Court granted JSC's

---

[7/]    Pursuant to S.D.N.Y. Local Civil Rule 37.2, "no motions under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the court and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference."  JSC's application for judicial assistance with respect to Jossem's non-production of the Apartment Documents functioned as the equivalent of a motion to compel under Fed. R. Civ. P. 37(a).  <u>See</u>, <u>e.g.</u>, <u>Penthouse Int'l, Ltd.</u> v. <u>Playboy Enter., Inc.</u>, 663 F.2d
(continued...)

application to compel Jossem to produce all non-privileged responsive documents. (<u>See</u> page 7 above.) Because JSC's request was granted and the discovery was, after much unjustifiable delay, provided after the application was made to this Court, and because Jossem's conduct necessitated the application, Jossem is required under Rule 37(a)(4)(A) to pay JSC's reasonable attorneys' fees for its first request for judicial intervention, which amounted to $8,843. (<u>See</u> JSC FOF ¶ 20 n.12.)

---

[2/]      (...continued)
371, 387-88 (2d Cir. 1981) ("[T]he record is clear that Penthouse deliberately disobeyed Judge Griesa's March 22, 1978, order to produce in full all of its financial statements for the relevant periods relating to gross income, net income and circulation revenue. . . . Equally clear was the relevance of the requested data. . . . The fact that the March 22 order was oral rather than written, and that it was not entered pursuant to a formal written Rule 37(a) motion, does not deprive it of any of its binding force and effect. . . . The 1977 Rule 34 demand was made in writing, and was followed by an oral application by Playboy's counsel for an order directing that the requested records be produced. The court acted only after a thorough due process hearing at which the relevance of the requested records was discussed. In addition Judge Griesa had heard extensive testimony on the issues and reviewed the pretrial depositions. His order was recorded by the court reporter."); <u>Kahn</u> v. <u>General Motors Corp.</u>, 88 Civ. 2982, 1992 WL 208286 at *2 (S.D.N.Y. Aug. 14, 1992) ("Since Hazeltine did not prevail on any of the claims of privilege raised in that letter or its subsequent motion for reconsideration, it is unfair to pass on to GM any portion of the cost of litigating that issue. This is the rule with respect to formal discovery motions, Rule 37(a)(4), Fed.R.Civ.P., and I perceive no reason, on this record, why a different result should obtain with respect to a dispute resolved by informal submission.").

While the informal procedure of Local Rule 37.2 often resolves discovery issues without much expenditure of lawyer (or court) time such that counsel do not even seek Rule 37(a)(4) fees (or if sought, the Court has the discretion to deny them under the "other circumstances" prong of Rule 37(a)(4)), in this case there were extensive proceedings before the Court before Jossem produced all but 6 of the 8,400 Apartment Documents that she initially withheld. (<u>See</u> page 12 above.) It would be unfair to JSC to deprive it of Rule 37's cost shifting protection because of the absence of a formal motion despite extensive judicial proceedings. Local Rule 37.2 should not have that effect in a case like this. Indeed, despite Jossem's vigorous opposition to this Court's award of attorneys' fees to JSC, Jossem has never argued that fees should be denied because of the absence of a <u>formal</u> Rule 37(a) motion.

The Court finds that Jossem's failure to produce the responsive Apartment Documents was not substantially justified, and Jossem has not rebutted the presumption in favor of the fee shifting.[8] JSC thus is entitled to its attorneys' fees.[9]

---

[8]      Jossem's October 5, 2004 Objections to my September 21, 2004 award of attorneys' fees to JSC argued that this Court "failed to rule, as Rule 37 requires, that Reich and Jossem's assertion of Fifth Amendment and/or attorney client privilege was not substantially justified." (Dkt. No. 391: Jossem Objections to 9/21/04 Order at 3, 21.) As the Findings of Fact above attest, the fact that a mere six of over eight thousand documents were in fact privileged clearly show that Jossem's efforts to assert privilege were not only not substantially justified, but asserted in remarkably bad faith. But it is more than the number of documents withheld and eventually produced. Jossem and her counsel invoked the Fifth Amendment on a blanket basis as to all the documents, despite the Court's warning that that would not be sufficient. (See page 7 above.) Indeed, when the Court forced Jossem's counsel to actually review the documents (against the categories of documents Jossem previously produced without invoking her Fifth Amendment privilege), counsel produced more than half of the previously withheld documents. (See page 11 above.) And the Court's own review of a portion of the remaining documents found that few appeared to be privileged. (See page 10 above.) Finally, while Jossem's objections claimed that this Court did not make the appropriate findings of not substantially justified, Jossem has offered no argument that her position was substantially justified, other than claiming there was a "genuine dispute" involved. (See Jossem Objections to 9/21/04 Order at 21.) To the contrary, the conduct of Jossem throughout the dispute surrounding the Apartment Documents showed bad faith, not substantial justification.

[9]      See, e.g., Aetna Life Ins. Co. v. Licht, 2005 WL 180873 at *2 ("Defendants have provided the Court with no explanation as to their failure to respond to plaintiff's interrogatories and document requests. Therefore, the only proper course is to grant plaintiff's instant motion and find that an award of fees and expenses incurred in bringing this motion is properly granted to plaintiff under Rule 37(a)(4)(A)."); Pullen v. Arrow Fin. Servs., LLC, 02 Civ. 647, 2002 WL 32864712 at *6 (D. Conn. Oct. 17 2002) (Court ordered payment of attorney's fees pursuant to Rule 37(a)(4)(A) where "[t]he court finds that the defendant has resisted plaintiff's discovery requests and that its resistance was without substantial justification. Defendant's actions have resulted in the unfair and unnecessary expenditure of the court's resources and those of the plaintiff."); Pier v. Long Island Sav. Bank, 97 Civ. 6295, 1998 WL
(continued...)

**C.** **Under Rule 37(b) Jossem is Ordered to Reimburse JSC for $100,103, JSC's Remaining Attorneys' Fees Connected With the Apartment Documents Discovery Dispute**

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party "fails to obey an order to provide or permit discovery," the Court "may make such orders in regard to the failure as are just," including imposing attorneys' fees. Fed. R. Civ. P. 37(b)(2).[9/] The sanctions specified under Rule 37 are not exhaustive, and the Court may impose such sanctions as are just. New York Bay Co. v. State Bank of Patiala, 93 Civ. 6075, 1995 WL 867357 at *4 (S.D.N.Y. Sept. 25, 1995) (Peck, M.J.) (citing Miltope Corp. v. Hartford Casualty Ins. Co., 94 Civ. 4564, 1995 WL 456377 at *3 (S.D.N.Y. Aug. 2, 1995) (Peck, M.J.); see also, e.g., A.V. by Versace, Inc. v. Gianni Versace S.p.A., 96 Civ. 9721, 98 Civ. 0123, 2002 WL 54610 at *6 (S.D.N.Y. Jan. 15, 2002) ("Plaintiff's motion for sanctions is brought under Rule 37(b)(2) of the Federal Rules of Civil Procedure, which provides the framework for the imposition of sanctions for failure to comply with

---

[9/] (...continued)
671442 at * (S.D.N.Y. Sept. 29, 1998) (Denying objections to magistrate judge's award of Rule 37(a) attorneys fees for "failure to comply with the Magistrate Judge's order to produce certain documents."); Land Ocean Logistics, Inc. v. Aqua Gulf Corp., 181 F.R.D. 229, 242 (W.D.N.Y. 1998) ("Defendants' refusal [based upon lack of relevancy, confidentiality, and possession of the documents by the plaintiff] to voluntarily produce the [requested] documents was not substantially justified" and plaintiff thus was entitled to Rule 37(a)(4)(A) expenses.).

[10/] The order may, but need not be, a Rule 37(a) order, and the order disobeyed "does not have to be a formal, written order." 7 Moore's Federal Practice §§ 37.42[2], 37.42[3]; see also, e.g., 8A Wright, Miller & Marcus, Federal Practiace & Procedure: Civil 2d § 2289 at 670 & n.6 (citing cases).

a court's discovery orders. The Rule provides that the court may make such orders in regard to a discovery failure 'as are just,' including (1) an order striking out pleadings or rendering a judgment by default; (2) an order of contempt; and (3) an order requiring the disobedient party to pay the reasonable expenses, including attorneys' fees, caused by the disobedient party's failure."); Intertec Contracting v. Turner Steiner Int'l, S.A., 98 Civ. 9116, 2001 WL 812224 at *7 (S.D.N.Y. July 18, 2001) ("Rule 37(b)(2), Fed. R. Civ. P., provides that a district court may impose sanctions, among them the imposition of expenses including attorney's fees, where a party fails to comply with an order of the Court directing such party to 'provide or permit discovery.'").

Rule 37(b)(2) specifically provides for the award of attorneys' fees to the prevailing party:

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2) (emphasis added).

The Advisory Committee Notes make clear that the Court should award attorneys' fees pursuant to Rule 37(b)(2), as with Rule 37(a), to place the burden on the disobedient party to avoid expenses:

> Subdivision (b)(2) is amplified to provide for payment of reasonable expenses caused by the failure to obey the order. . . . The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.  Allocating the burden in

this way conforms to the changed provisions as to expenses in Rule 37(a), and is particularly appropriate when a court order is disobeyed.

1970 Advisory Committee Note to Rule 37(b) (emphasis added); see, e.g., John B. Hall, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1177 (2d Cir. 1988) ("Rule 37(b)(2) mandates" the award of attorneys' fees unless disobedient party's action was substantially justified.); Alvarado v. Manhattan Worker Career Ctr., 01 Civ. 9288, 2003 WL 194203 at *1 (S.D.N.Y. Jan. 28, 2003) (Rule 37(b)(2) "places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.") (internal quotations omitted); Intertec Contracting v. Turner Steiner Int'l, S.A., 98 Civ. 9116, 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001) ("[F]ailure to comply with discovery orders justly allows the court to impose costs upon the failing party. . . . The Second Circuit has repeatedly stated the importance of following discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril.'"); 2 Silberberg § 26:13 ("Fed. R. Civ. P. 37(b), (d) requires the court to impose the sanction [of awarding attorneys' fees] unless the court finds that the failure to obey a discovery order or to make discovery was substantially justified or that other circumstances make an award of expenses unjust."); 7 Moore's Federal Practice § 37.51[9] ("If a party disobeys a discovery order, the district court must require the disobedient party, or the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified, or that other circumstances make an award of expenses unjust. . . . The disobedient party bears the burden of proving that its failure was substantially

justified, or that it would be unjust for some other reason to impose compensatory monetary sanctions.") (emphasis added); 8A Wright, Miller & Marcus, <u>Federal Practice & Procedure: Civil 2d</u> § 2289 at 672-74 (Attorneys' fee is "one sanction that must always be considered [under Rule 37(b)(2)] no matter what action is taken under the five lettered paragraphs. . . . The 1970 amendment [to Rule 37(b)(2)] made the award [of attorneys' fees] mandatory, regardless of what other sanctions may be imposed unless the delinquent party shows substantial justification for its failure or other circumstances making an award unjust. This provision is in most respects similar to the award of expenses and fees provided for in Rule 37(a)(4) and the discussion of that portion of the rule should be consulted.") (fns. citing cases omitted).

Pursuant to Rule 37(b)(2), Jossem is ordered to reimburse JSC the remaining $100,103 associated with judicial involvement in the discovery disputes over the Apartment Documents. As discussed in detail above, in response to JSC's application, the Court ordered the non-privileged Apartment Documents produced, and further ordered that any Fifth Amendment assertion must be "sufficiently asserted" and "not just a blanket, I assert the Fifth now, find me 6 weeks later" assertion. (<u>See</u> page 7 above.) Jossem, however, disobeyed this order, submitting a blanket Fifth Amendment assertion through her attorney. (<u>See</u> page 7 above.) As a result, JSC was forced to expend thousands of dollars to fight Jossem for the Apartment Documents, which, at the end of the day, comprised 8,400 non-privileged documents (only six documents were privileged, and that was based on the attorney-client, not Fifth Amendment, privilege). (<u>See</u> pages 12-13 above.) For the reasons stated above (<u>see</u> page 30 n.8 above), Jossem was not substantially justified

in failing to produce the documents in response to the Court's initial (and several follow-up) orders. The attorneys' fees sought by JSC is a just sanction that relates directly to the fees expended by JSC in connection with judicial proceedings necessary to get Jossem to obey the Court's orders to produce all of the non-privileged Apartment Documents. See, e.g., Daval Steel Prods v. M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir.1991) ("[W]e find that the district court's imposition of sanctions upon Ekco [under Fed. R. Civ. P. 37(b)(2)] was wholly justified.  Ekco was subject to an unequivocal order of the court requiring it to produce a witness for deposition, and to produce documents relating to that deposition. The court's order was issued at a hearing during which the scope of required discovery was fully discussed, and Ekco's objections to that discovery were explicitly rejected. The order itself was necessitated only by Ekco's inexcusable refusal to comply voluntarily with proper party-initiated discovery. The conduct of Ekco's counsel at the July 12, 1991 deposition, the repeated failure to produce demanded documents subject to an explicit court order, and Ekco's unilateral refusal to continue the deposition following a largely aborted initial session evince a willful frustration of plaintiffs-appellees' efforts to discover the true facts concerning potential alter ego liability. The district court was accordingly justified in imposing severe sanctions for this failure to comply with court-ordered discovery."); Knox v. Palestine Liberation Org., 03 Civ. 4466, 2005 WL 712005 at *1, 6-7 (S.D.N.Y. Mar. 21, 2005) ("Plaintiffs seek the award of the costs and attorneys' fees they incurred in attempting to secure responses to their discovery requests. . . . The Court . . . concludes that Plaintiffs are entitled to recover the costs and attorneys' fees incurred in attempting to secure compliance with the Court's discovery Orders."); Creative Res. Group of New Jersey, Inc. v. Creative

Res. Group, Inc., 212 F.R.D. 94, 102 (E.D.N.Y. 2002) ("Rule 37 allows for the imposition of sanctions in the form of reasonable fees and costs incurred by reason of a party's discovery failures. This court finds that the plaintiff was forced to expend wholly unnecessary time and effort in its unsuccessful attempts to get the defendants to comply with their discovery obligations. This waste of time and resources was caused by the defendants' bad conduct, which required the plaintiff to make motions to compel and motions for sanctions."); A.V. by Versace, Inc. v. Gianni Versace S.p.A., 96 Civ. 9721, 98 Civ. 0123, 2002 WL 54610 at *8 (S.D.N.Y. Jan. 15, 2002) ("There is no question that plaintiff has expended substantial time and effort in attempting to secure responses to its document requests and compliance with this Court's Orders, over a period of over two years. Clearly, it is entitled to the attorneys' fees and costs it has incurred in these efforts" pursuant to Rule 37(b)(2).); Bowne of New York City, Inc. v. AmBase Corp., 161 F.R.D. 258, 261, 265 (S.D.N.Y.1995) (Rule 37 attorneys' fees awarded where party "and its counsel refused to produce more than 1,500 documents or answer more than 100 deposition questions on the grounds of attorney-client privilege and work product protection" where defendant's opposition to production ignored clear Second Circuit law.).[11/]

---

[11/] Were Jossem to argue that any of its actions after the first Court conference about the Apartment Documents were not in "violation" of a Court order, the sanction of attorneys' fees still would be proper pursuant to Fed. R. Civ. P. 37(a) – JSC was required to make numerous applications to the Court, and the Court was required to issue numerous orders and hold several conferences, in order to get Jossem to produce over eight thousand pages of documents that should have been produced without the need for any judicial involvement. See, e.g., Alvarado v. Manhattan Worker Career Ctr., 01 Civ. 9288, 2003 WL 194203 at *1 (continued...)

Indeed, Jossem's counsel acknowledged at the September 21, 2004 conference that generally the prevailing party is entitled to attorneys' fees under Rule 37:

> THE COURT:  And under Rule 37 the loser pays if the court wishes to go that route on any discovery motion?
>
> MR. AKBAR
> [Jossem's Counsel]:  Agreed.

(9/21/04 Peck Conf. Tr. at 37, quoted more fully at pages 13-17 above.) Jossem's only argument for not imposing fees on her was that JSC did not show "prejudice." (9/21/04 Peck Conf. Tr. at 36-40, quoted at page 13 above; see also, e.g., Dkt. No. 391: Jossem Objections to 9/21/04 Order, at 3, 18-

---

11/   (...continued)
(S.D.N.Y. Jan. 28, 2003) (Rule 37(b)(2) sanction of attorneys' fees ordered: "After the October 8, 2002 hearing, this court found that plaintiff failed to establish that his repeated failures to abide by orders of this court were substantially justified. . . . Accordingly, pursuant to an exercise of its discretion in this area, the court awarded defendants attorneys' fees and costs incurred in addressing the extended discovery dispute."); Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc., 212 F.R.D. at 102; AFP Imaging Corp. v. Philips Medizin Sys., 92 Civ. 6211, 1994 WL 698322 at *1 (S.D.N.Y. Dec. 13, 1994) ("Defendant . . . was entitled to reimbursement of its attorneys' fees and expenses pursuant to Rule 37(a)(4), Fed. R. Civ. P., as the prevailing party on various discovery motions as to which Plaintiff's opposition was not substantially justified. In addition to its repeated failure to meet its discovery obligations under the Federal Rules of Civil Procedure, Plaintiff violated two Court Orders requiring discovery production."); Brignoli v. Balch, Hardy & Scheinman, Inc., 86 Civ. 4103, 1989 WL 146767 at *14 (S.D.N.Y. Dec. 1, 1989) ("Counsel's bad faith was illustrated by a course of conduct which consisted of routinely failing to produce . . . documents . . . ; requiring defense counsel to bring the failure to the attention of the court for the setting of a hearing or conference, at which time counsel for plaintiff would agree or be ordered to produce documents within a fixed period of time, following which counsel for plaintiff would fail to produce the documents within the agreed or established period, requiring defense counsel to again seek the court's intervention. All told, the cycle was repeated across four court-ordered production deadlines, none of which was satisfied. The conduct set forth above is a paradigm of discovery abuse.").

21.)  Jossem's argument that if she had the documents at the time of the first document demand, JSC would have had to make the same motions to compel production, and thus JSC had no additional expense from their "late" discovery is frivolous.  (Jossem Objections to 9/21/04 Order at 3, 20-21.) If Jossem had required JSC to jump through the same hoops earlier, the Court could – and would – have imposed Rule 37(a)-(b) attorneys' fees sanctions at that earlier time.

Second, Jossem argues that JSC has not shown "prejudice."  As the Court stated at the September 21, 2004 conference, at a minimum JSC's prejudice is that it spent over $100,000 in attorneys' fees.  To the extent prejudice is necessary before imposing attorneys' fees as a sanction – which it is not – the expenditure of money in legal fees constitutes the prejudice.  Moreover, while the Court may need to consider the issue of prejudice before imposing more severe sanctions (such as preclusion, dismissal, default judgment, etc.), it is not a factor for the award of attorneys' fees to the prevailing party.  See 7 Moore's Federal Practice § 37.50[1][a] ("Prejudice, however, is not an essential prerequisite for the imposition of sanctions.  It is important to the administration of justice for courts to respond to unexcused violations of their orders, even when it is not clear that the violations have adversely affected another party's substantive rights . . . [A] court should not permit the moving party to suffer net economic losses as a result of another party's violation of a discovery order.") (fns. citing cases omitted); Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union, 212 F.R.D. 178, 229 (S.D.N.Y. 2003) ("[T]he Union's assertion that the Met must show prejudice before a sanction may be ordered under Rule 37 is without merit."); Yeboah v. United States, 99 Civ. 4923, 2000 WL 1576886 at *4-5 (S.D.N.Y. Oct. 20, 2000)

(attorneys' fees awarded, rejecting plaintiff's argument that defendant was not prejudiced because the documents ultimately were produced. "[T]his assertion is irrelevant to the imposition of Rule 37 [monetary] sanctions. Counsel simply ignores the fact that the required compliance with the discovery request only came about as the result of months of effort by defendant's counsel. . . ."). None of the cases (and treatises) cited above awarding attorneys' fees under Rule 37(a) or 37(b) required (or even discussed) any need for prejudice (beyond the expense to the prevailing party) in order to award attorneys' fees.[12/]

   As the Court warned Jossem's counsel at the September 21, 2004 conference (see pages 16-17 above), JSC also is entitled to its fees for the sanctions motions. See, e.g., Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc., 212 F.R.D. at 103 ("Here, the plaintiff is entitled to costs incurred both in making motions to compel and in seeking to have the orders that

---

[12/]   In contrast, Jossem cites to an opinion from the District of Kansas which states that "[f]ailure to comply with the mandate of [Rule 37(c)(1)] is harmless when there is no prejudice to the party entitled to the disclosure." Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995); see also Kara Holding Corp. v. Getty Petroleum Mktg., Inc., 99 Civ. 0275, 2004 WL 1811427 at *24 (S.D.N.Y. May 12, 2004) (quoting Nguyen). (See Dkt. No. 390: Akbar 10/5/04 Aff. Ex. Z: Jossem Opp. Br. at 3.) After citing to Nguyen and Kara, Jossem argues that JSC has not demonstrated that it was prejudiced by Jossem's conduct. (Jossem Opp. Br. at 4.) According to the cases that Jossem cited, whether the non-disclosure was harmless is Jossem's burden to prove. See, e.g., Nguyen v. IBP, Inc., 162 F.R.D. at 680 ("The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure."). However, in both Kara and Nguyen, the issue was whether evidence should be precluded because of missing information in the expert's report. Preclusion is a far more severe sanction than attorneys' fees. The Court does not find Kara or Nguyen applicable to the issue of awarding attorneys' fees under Fed. R. Civ. P. 37(a)-(b); if it were, the Court declines to follow them.

followed from these motions enforced . . ."); 7 <u>Moore's Federal Practice</u> § 37.23[6] at 37-52 ("Attorneys' fees incurred in preparing a request for expense shifting sanctions are also recoverable. Likewise, the costs of defending on appeal an award of expense shifting sanctions may be added to the original sanction award.") (fns. citing cases omitted); <u>Bowne of New York City, Inc.</u> v. <u>AmBase Corp.</u>, 161 F.R.D. 258, 263 (S.D.N.Y. 1995) ("Judge Dolinger's finding that AmBase's positions on all three [Rule 37] motions were not substantially justified, and his ruling that AmBase must pay Bowne and Chemical's expenses in preparing all three motions, specifically applied to all three motions.  It is true that because Judge Dolinger found that AmBase had largely waived its privilege claims he did not need to rule on each individual document or deposition question addressed by the testimony and document motions.  However, it would be perverse to hold that the fact that AmBase lost on the waiver motion meant that its opposition to the other motions was justified or that Bowne and Chemical must therefore cover the costs of bringing the motions to compel.  Therefore, AmBase will only be relieved of its obligation to pay expenses related to a specific motion if it can show that its position on that motion was substantially justified. . . . Therefore, Judge Dolinger's decision that AmBase's opposition to these two motions was not substantially justified was neither contrary to law nor clearly erroneous, and the ruling awarding Bowne and Chemical the costs of defending the testimony and document motions must stand.").

## II.   AS AN ALTERNATE GROUND, JOSSEM IS ORDERED TO REIMBURSE JSC $108,946 UNDER THE COURT'S INHERENT POWER TO IMPOSE SANCTIONS

The Court finds that the sanction of requiring Jossem to pay JSC's attorneys' fees in connection with the discovery applications that – after several Court orders – led to Jossem's production of all but 6 of the 8,400 Apartment Documents is fully justified under Rule 37(a)-(b) of the Federal Rules of Civil Procedure.  Nevertheless, if a reviewing court for some reason were to find the $108,946 sanction unavailable under Rules 37(a)-(b), the sanction would be appropriate pursuant to the Court's inherent power to impose sanctions for Jossem's discovery abuses.

"Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs. . . . Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction . . . "  Residential Funding Corp. v. Degeorge Financial Corp., 306 F.3d 99, 106-07 (2d Cir. 2002); see also, e.g., Blauinsel Stiftung v. Sumitomo Corp., No. 03-7636, 88 Fed. Appx. 443, 445 (2d Cir. Feb. 12, 2004) ("Although appellants take issue with the district court's authority under Fed. R. Civ. P. 37(b) to have sanctioned them to nearly the full amount of defendants' expenses, we need not reach that issue as we find the district court's 'inherent power to manage its own affairs' – on which the district court also expressly relied – provided the court with sufficient authority."); Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."), cert. denied, 528 U.S.

1119, 120 S. Ct. 940 (2000); DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 135-36 (2d

Cir. 1998); Alaimo v. Trans World Airlines, Inc., 00 Civ. 3906, 2005 WL 267558 at *3 (S.D.N.Y.

Feb. 3, 2005) ("Even in the absence of a discovery order, sanctions may be imposed pursuant to the

Court's inherent power to manage its own affairs."); Marathon Ashland Petroleum LLC v. Equili Co.,

00 Civ.2935, 2004 WL 992196 at *3 (S.D.N.Y. May 5, 2004) (same); Cielo Creations, Inc. v. Gao

Da Trading Co., 04 Civ. 1952, 2004 WL 1460372 at *3-4 (S.D.N.Y. June 28, 2004).

"Because of the potency of the court's inherent power, courts must take pains to

exercise restraint and discretion when wielding it. Accordingly, this court has required a finding of

bad faith for the imposition of sanctions under the inherent power doctrine. That bad faith must be

shown by (1) 'clear evidence' or (2) 'harassment or delay or . . . other improper purposes.'" DLC

Mgmt. Corp. v. Town of Hyde Park, 163 F.3d at 136.[13]

---

[13]    Although United States v. Seltzer, 227 F.3d 36, 40-48 (2d Cir. 2000), limited the DLC Mgmt.
       Corp. holding that required a showing of bad faith in circumstances not applicable here, this
       Court must make a finding of bad faith in order to sanction Jossem using the Court's inherent
       powers. As explained in a recent decision in this District:

             The Second Circuit has set out two different circumstances under which a district
             court may assess attorney's fees against counsel pursuant to its inherent authority.
             First, '[w]hen a district court invokes its inherent power to impose attorney's fees or
             to punish behavior by an attorney in the actions that led to the lawsuit or conduct of
             the litigation, which actions are taken on behalf of a client, the district court must
             make an explicit finding of bad faith.' United States v. Seltzer, 227 F.3d 36, 41-42
             (2d Cir. 2000) (internal quotation marks and citations omitted). Second, 'when the
             district court invokes its inherent power to sanction misconduct by an attorney that
             involves that attorney's violation of a court order or other misconduct that is not
             undertaken for the client's benefit, the district court need not find bad faith before
                                                               (continued...)

This Court thus finds support for its award to JSC of $108,946 in attorneys' fees pursuant to the Court's inherent powers.  As described on pages 11-12 above, Jossem clearly acted in bad faith when she ceased to use her name in her Christie's dealings (which has never been explained to the Court), in her failure to produce the Apartment Documents when they were first requested (apparently to allow her to continue her Christie's dealings), in seeking stays of the time to provide an affidavit supporting her Fifth Amendment privilege claim where she then only asserted a blanket claim that the Court already held would be insufficient and, in any event, where no Fifth Amendment privilege existed for the documents, and in not producing the responsive Apartment Documents without Court intervention once they were discovered by JSC's counsel (solely because the documents appear to be devastating to Jossem concerning JSC's alter ego claims).  (See pages 3-18 above; see also page 25 n.6 above.)  The Court itself had reviewed a large number of the withheld documents, and finds that there was no justification for Jossem's failure to produce them. Indeed, Jossem ultimately decided to withdraw its remaining Fifth Amendment claim after filing objections to one of my orders, belatedly being concerned by defendant JSC's arguments.  (See page 14 above.)  Jossem's bad faith is shown by clear evidence and because her failure to produce was for purpose of delay and other improper purposes.  Sanctions of JSC's attorneys' fees clearly are justified

---

13/    (...continued)
           imposing a sanction under its inherent power.'  Id. at 42.

       Rowe Entm't, Inc. v. William Morris Agency, Inc., 98 Civ. 8272, 2005 WL 1804233 at *3
       (S.D.N.Y. Aug. 1, 2005).

under the case law as to the Court's inherent power to impose sanctions.  See, e.g., Blauinsel Stiftung v. Sumitomo Corp., 88 Fed. Appx. at 445 ("The district court found that the appellants here engaged in a series of actions, orchestrated by counsel in bad faith, to evade their discovery obligations, and that appellants, with full knowledge that they were under a court order to produce the trustees for deposition, chose instead to voluntarily dismiss their suit for the purpose of evading that order. Further, although appellants' counsel represented otherwise to the district court, the court found that appellants then quickly filed the same lawsuit in state court under different plaintiffs' names. Because none of the foregoing findings are clearly erroneous, the district court 'was within [its] discretion to vindicate itself and compensate [defendants] by requiring [appellants] to pay for all attorney's fees.'");  DLC Mgm't Corp. v. Town of Hyde Park, 163 F.3d at 136 (Finding of bad faith by magistrate judge upheld and deemed "sufficiently concise and based on clear evidence" where magistrate found that "defendants had acted in 'conscious disregard of their discovery obligations.'"); D'Ascoli v. Roura & Melamed, 02 Civ. 2684, 2003 WL 22019730 at *4 (S.D.N.Y. Aug. 6, 2003) (Default judgment recommended by magistrate judge using inherent powers where "Roura & Melamed did not file a response to D'Ascoli's sanctions motion, and Serrins ignored a telephone message from the Court inquiring as to their response. Such behavior shows a complete disregard for the judicial system, bad faith in the conduct of this litigation, willful disobedience of the Court's orders, and a vexatious delay of proceedings. Roura & Melamed and Serrins have failed to offer any justification for their noncompliance."), modified, 2003 WL 22439648 at *1 (S.D.N.Y. Oct. 23, 2003); Alvarado v. Manhattan Worker Career Ctr., 01 Civ. 9288, 2003 WL 194203 at *1 (S.D.N.Y.

Jan. 28, 2003) (Attorney's fees awarded under Rule 37(b) and the court's inherent power where "[a]fter the . . . hearing, this court found that plaintiff failed to establish that his repeated failures to abide by orders of this court were substantially justified. Specifically, the court found that plaintiff's failure to comply with provisions of three Orders 'was willful and that plaintiff and/or his attorney acted in bad faith.'"); <u>Murphy</u> v. <u>Board of Educ. of Rochester City School Dist.</u>, 196 F.R.D. 220, 228 (W.D.N.Y. 2000) ("[T]his Court finds that Logan-Baldwin's decision to issue the third-party subpoenas discussed herein without notice to opposing counsel was without any colorable basis and was undertaken in bad faith. Having so found, it is the decision of this Court that Logan-Baldwin should pay as a compensatory sanction the attorneys' fees and costs incurred by the School District defendants as a result of her conduct.").

**CONCLUSION**

For the reasons set forth above, the Court orders Jossem to reimburse JSC for $108,946 in attorneys' fees pursuant to Rules 37(a)-(b) of the Federal Rules of Civil Procedure and, to the extent necessary, the Court's inherent power..

**FILING OF OBJECTIONS TO THIS OPINION AND ORDER**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Opinion and Order to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl,

500 Pearl Street, Room 1030, and to my chambers, 500 Pearl Street, Room 1370. Any requests for

an extension of time for filing objections must be directed to Judge Koeltl. Failure to file objections

will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106

S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert.

denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank

v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small

v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd.,

838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

     SO ORDERED.

DATED:     New York, New York
           August 16, 2005

                        **Andrew J. Peck**
                        United States Chief Magistrate Judge

Copies to:     David Dunn, Esq.
              Barry A. Bohrer, Esq.
              Edith Reich & Brigitte Jossem (Regular & Certified Mail)
              Judge John G. Koeltl